# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BANKERS HEALTHCARE GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> REASSURE AMERICA LIFE INSURANCE ) <br> COMPANY, f/k/a VALLEY FORGE LIFE ) <br> INSURANCE CO., ) <br> ) <br> Defendant and Third-Party ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> REBECCA A. JOHNSON, ) <br> ) <br> Third-Party Defendant. ) | Case No. CIV-10-1044-D |

## ORDER

Before the Court are the summary judgment motion [Doc. No. 25] of Plaintiff Bankers Healthcare Group, Inc. ("BHG") and the cross-motion for summary judgment [Doc. No. 26] of Defendant and Third-Party Plaintiff Reassure America Life Insurance Company, f/k/a Valley Forge Life Insurance Co. ("REALIC"). Each party has timely responded to the opposing party's motion, and they submit an extensive record.

Background:

BHG brought this action to recover the outstanding balance of a loan made to Dr. James M. Johnson ("Dr. Johnson") by BHG on or about October 2, 2008. As part of the collateral for the loan, Dr. Johnson assigned to BHG the proceeds of a life insurance policy issued by REALIC. Dr. Johnson died on December 2, 2009; at that time, the loan had not been repaid, and BHG sought proceeds from the life insurance policy from REALIC. However, REALIC paid the full policy

proceeds to Dr. Johnson's widow, Rebecca A. Johnson. BHG contends REALIC wrongfully failed to honor the assignment of the life insurance policy, and seeks $76,345.94, plus late fees and accrued interest.

REALIC contends it never received a valid assignment from Dr. Johnson and BHG and, as a result, paid the life insurance policy proceeds to Mrs. Johnson, the beneficiary of the policy. REALIC argues it does not owe any damages to BHG; alternatively, it contends that, if any amount is due and owing to BHG, Mrs. Johnson is obligated to make payment.

BHG and REALIC have filed cross-motions for summary judgment. Each argues the undisputed facts in the record entitle it to judgment as a matter of law.

Summary judgment standard:

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

To avoid summary judgment, the opposing party must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The factual evidence in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266 1273 (10th Cir. 2005). However, the opposing party's evidence must be sufficient to establish more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A party cannot rely on the allegations in the

complaint or conclusory assertions, but must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003)"); *Adler,* 144 F.3d at 671-72.

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322. In such cases, the movant is not required to disprove the cause of action, but need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,* 506 U.S. 1013 (1992)).

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.,* 490 F. 3d 1211, 1216 (10th Cir. 2007) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)).

<u>The record before the Court:</u>

The parties do not dispute that Dr. Johnson secured a loan from BHG on October 2, 2008, and executed a promissory note and security agreement, copies of which are submitted as BHG Exs.

3

1 and 2. In connection with the loan, Dr. Johnson also executed a Collateral Assignment of Life Insurance ("Assignment"), a copy of which is submitted as BHG Ex. 3. In the Assignment, Dr. Johnson agreed to assign to BHG the proceeds of a life insurance policy issued by REALIC.

A copy of the Assignment executed by Dr. Johnson was faxed by BHG to REALIC on October 13, 2008, accompanied by a transmittal sheet entitled "Request for Collateral Assignment." BHG Ex. 4. REALIC does not dispute that it received the Request for Collateral Assignment form, accompanied by a Collateral Assignment of Life Insurance form signed by Dr. Johnson.

The Collateral Assignment form provided by BHG to REALIC included a section entitled "Acknowledgment of Collateral Assignment," and that section requested the signature of a REALIC representative to approve a statement on the form which provided: "The Company does hereby acknowledge this Assignment without assuming any responsibility as to the effect, sufficiency or validity thereof." REALIC Ex. 2, pp. 195-96.

There is no dispute that REALIC did not sign the acknowledgment. Furthermore, the evidence before the Court reflects that REALIC formally denied the request for collateral assignment. On October 13, 2008, the date BHG's "Request for Collateral Assignment" form was faxed, REALIC sent letters to both Dr. Johnson and BHG responding to the request; those letters provided in pertinent part, as follows:

> We received your request for Collateral Assignment; however, we do not accept the faxed request. Also, we need additional information in order to process this request.
>
> Please provide the following information: We must have the signature along with the designation (President, Vice President, Secretary, Treasurer or Controller) of the officer signing on behalf of the Banker's Healthcare Group, Inc. at the space designated as "Assignee" on the second page of the form.
>
> Enclosed is a new Collateral Assignment Form to be completed and returned to us.

4

October 13, 2008 letter from REALIC to Dr. Johnson, showing a copy to BHG, BHG Ex. 9, p. 2; REALIC Ex. 2, p. 198. REALIC also sent a letter directly to BHG, enclosing its letter to Dr. Johnson. BHG Ex. 9., p. 1. REALIC's exhibit consisting of the October 13, 2008 letter to Dr. Johnson also attaches REALIC's two-page form, "Assignment of Life Insurance Policy as Collateral," which REALIC enclosed with its letter to Dr. Johnson. REALIC Ex. 2, pp 199-200. It is not disputed that this form was never completed and returned to REALIC.

At the time REALIC refused to accept the BHG faxed request for collateral assignment, it maintained specific procedures for assignment of its policies. According to these procedures, REALIC required that "the request for assignment be mailed to it, that it be executed by both the policy owner or the policy owner's legal representative and the requested assignee or legal representative and that any corporate signor identify himself by name and title." Affidavit of REALIC Senior Vice President Donald J. Sanders ("Sanders Aff."), REALIC Ex. 1, ¶ 8. Those requirements were communicated to Dr. Johnson and BHG in REALIC's October 13, 2008 letter. BHG Ex. 9; REALIC Ex. 2, p. 198.

It is undisputed that the assignment form provided by REALIC to Dr. Johnson and BHG was never completed and returned to REALIC. REALIC's file regarding Dr. Johnson reflects that no further communication was received from BHG regarding the request for an assignment, and BHG did not communicate with REALIC regarding the requested assignment until April 5, 2010, several months after Dr. Johnson's death. Sanders Aff., REALIC Ex. 1, ¶¶ 11, 12.

The policy insuring Dr. Johnson's life ("Policy")was issued by REALIC's predecessor, Valley Forge Life Insurance Company, in the amount of $250,000; the policy date was September 15, 1998, and Dr. Johnson's wife, Rebecca Johnson, was the designated beneficiary. Sanders Aff.,

5

REALIC Ex. 1, ¶ 3. The Policy contained an express provision regarding assignments:

> ASSIGNMENT – You may Assign this policy. We are bound by an Assignment only if We receive a duplicate of the original Assignment at Our Executive Office. We are not liable for any payment made by Us before We record the Assignment. We take no responsibility for the validity of any Assignment.

Policy, REALIC Ex. 2, p. 321. It is not disputed that, prior to his October 13, 2008 request for an assignment of part of the Policy value to BHG, Dr. Johnson had completed an assignment request for the purpose of partially collateralizing a loan from Bank of Oklahoma. REALIC Ex. 2, p. 96. The assignment was recorded by REALIC; prior to Dr. Johnson's death, he repaid the loan to Bank of Oklahoma and, at his request, the assignment was released.

In this case, REALIC never recorded the assignment by Dr. Johnson to BHG because it found the assignment insufficient for the reasons set forth above. It takes the position that, because the assignment was not recorded, it had no obligation to pay anyone other than Mrs. Johnson upon Dr. Johnson's death.

The evidence before the Court shows that, sometime after Dr. Johnson's death in December 2009, Mrs. Johnson filed bankruptcy. According to REALIC, she did not list BHG as a creditor. The record contains no evidence regarding whether BHG sought to collect the amount owed on the indebtedness from Mrs. Johnson or Dr. Johnson's estate prior to filing suit against REALIC.

In its motion, BHG argues that, as a matter of law, the assignment executed by Dr. Johnson in favor of BHG is valid notwithstanding REALIC's rejection of the request for its approval of that assignment. According to BHG, under Oklahoma law, REALIC was legally bound to honor the assignment and to pay, from the Policy proceeds, to BHG the amount owed to BHG on the promissory note prior to paying Mrs. Johnson. BHG contends REALIC's failure to do so constitutes a breach of contract. In its summary judgment motion, BHG also contends its

6

assignment from Dr. Johnson created an equitable lien on the Policy proceeds in its favor.

In its motion, REALIC argues it cannot, as a matter of law, be liable to BHG on a breach of contract theory because REALIC never accepted the assignment and thus had no contract with BHG. If Oklahoma law acknowledges the validity of an assignment between Dr. Johnson and BHG, that does not render REALIC liable to BHG as the assignee because REALIC never accepted and recorded the assignment. With respect to the equitable lien theory advanced by BHG, REALIC argues that it did not benefit from paying the Policy proceeds to Mrs. Johnson; thus, if BHG has a cause of action, it must be asserted against Mrs. Johnson or Dr. Johnson's estate.

BHG argues in its motion that it is entitled to judgment on its claims against REALIC because the undisputed facts establish the assignment was valid and binding. It contends that, under Oklahoma law, REALIC is contractually obligated to honor the assignment and that its failure to pay BHG the portion of the Policy proceeds serving as collateral constitutes a breach of contract.

Application:

Under Oklahoma law, the "'assignment of a life insurance policy is an ordinary contract between the assignor and assignee and, as such, it is interpreted under general contract principles.'" *Randall v. Travelers Cas. & Sur. Co.,* 145 P. 3d 1048, 1053 (Okla. 2006) (quoting *Prudential Ins. Co. of America v. Glass*, 959 P. 2d 586, 594 (Okla. 1998)). REALIC does not question the validity of the assignment as between BHG and Dr. Johnson, but instead contends that the assignment was not binding on REALIC – and could not control its payment of Policy proceeds – because it was never accepted and "recorded" by REALIC. *See* REALIC Brief in Response to BHG's MSJ, p. 8. REALIC maintains that since it was not a party to the assignment which it rejected, it cannot be held liable for breach of the contract rights covered by the assignment. As REALIC argues, the record

7

before the Court establishes that REALIC expressly declined to accept the assignment as submitted.

BHG not only contends that REALIC's failure to accept and record the assignment by Dr. Johnson does not affect its validity, but it also asserts that REALIC breached the contract of insurance by failing to pay BHG. In support, BHG relies on *Alkire v. King*, 80 P. 2d 309 (Okla. 1938). As REALIC points out, however, *Alkire* is distinguishable because it involved the impact of the rights of rival claimants to policy proceeds where an assignment had been executed, but had not been accepted by the insurer. Although the court recognized the validity of the assignment, it did not hold the assignee could assert a contractual right against the insurer based on the assignment; instead, it found the assignment impacted the rights of rival claimants to the policy proceeds. *Alkire*, 80 P. 2d at 310. The court found "no merit to the contention that the assignment is not valid because [it was] not accepted by the insurance companies." *Id.* However, it also expressly noted "[t]he companies are not involved here; the suit is between rival claimants to the funds which have already been received from the companies." *Alkire*, 80 P. 2d at 310.

Contrary to the argument of BHG, *Alkire* does not support its breach of contract claim against REALIC because it is limited to the rights of the claimants after an assignment of policy proceeds, and does not involve a claim against an insurance company which did not accept or record an assignment. At best, *Alkire* may support a claim by BHG against Mrs. Johnson on the basis of the assignment executed by Dr. Johnson.

The more recent decision in *Randall* is also distinguishable. In *Randall*, the Oklahoma Supreme Court answered certified questions involving an insurer's actions which altered assignment rights under a settlement agreement whereby the insurer made payments to an injured party. Although the settlement agreement did not prohibit an assignment, the insurer purchased an annuity

8

to fund the settlement, and the annuity had the effect of restricting rights of assignment. The court held that, because the settlement agreement itself did not preclude an assignment, subsequent actions could not restrict the assignment right. *Randall*, 145 P. 3d at 1054-55.

Both *Alkire* and *Randall* provide that rights under an insurance policy may be assigned; similarly, a life insurance policy may be pledged as collateral security for a debt. *Prudential*, 959 P. 2d at 591-92. These decisions address the rights of the respective claimants to insurance policy proceeds where an assignment has been executed; the decisions do not, however, hold that an insurer is contractually bound by an assignment to which it is not a party.

Oklahoma has long held that "mere notice" to an insurer of the assignment of a policy "does not create a new contract between insurer and assignee" so as to make the insurer liable on the policy, as there was no "meeting of the minds" sufficient to create a contractual obligation of the insurer to the assignee. *Niagra Fire Ins. Co. v. Aebischer*, 44 P. 2d 5 (Okla. 1934). Where, as in this case, the insurer's consent to an assignment is required, "the assignee acquires no right *as against the insurer*" in the absence of that consent. Steven Plitt, Daniel Maldonado, and Joshua D. Rogers, *Couch on Insurance 3d,* § 36:72 (Rev. Ed. 2011) (emphasis added). "Life insurance policies may, and often do, expressly provide that they are not assignable without the consent of the insurer issuing them, and in this case, the provision must be complied with...to give the assignee any right thereunder *as against the insurer." Id.* (emphasis added).

In this case, the Policy provides that it may be assigned by the insured, Dr. Johnson. Policy, REALIC Ex. 2, p. 321. However, that language expressly provides that REALIC "is *bound* by an Assignment only" under certain circumstances, and it "is not liable for any payment made by Us before We record the Assignment." *Id.* (emphasis added). Furthermore, REALIC maintained

9

express procedures for the acceptance and recording of an assignment, and these were communicated to Dr. Johnson and BHG on the date it received the faxed request for the assignment. It is not disputed that these procedures were not followed, and REALIC received no further communication regarding the requested assignment until several months after Dr. Johnson's death and after it had paid the Policy proceeds to his beneficiary, Mrs. Johnson. Moreover, an applicable provision of the Oklahoma Statutes cited by both parties – 36 Okla. Stat. § 3624 – links assignability to the specific terms of the Policy. Here, the Policy terms required that BHG receive and "record" any assignment. This acceptance by recordation was apparently understood by BHG as the form of assignment it provided to REALIC required an acknowledgment by the insurer – which was never provided by REALIC.

The evidence, construed most favorably to BHG, cannot support a contention that REALIC accepted the assignment, thereby rendering it contractually liable to the assignee. As REALIC points out, BHG labeled its October 13, 2008 faxed communication to REALIC as a "request" for collateral assignment; it expressly asked REALIC to respond and "fax over binder and/or confirmation the request is being processed." BHG Ex. 4. Its request was labeled "urgent," and requested that REALIC "reply immediately." *Id.* The record establishes that REALIC replied immediately by sending correspondence to both Dr. Johnson and BHG in which it expressly declined to accept the proposed assignment, and further expressly explained the requirements for its acceptance as well as the forms to be completed to accomplish that result. Although BHG states that it did not receive this correspondence, that does not explain its failure to at least inquire regarding the status of its urgent request.

The evidence before the Court establishes that, although the assignment may be valid as

between Dr. Johnson and BHG, REALIC has no contractual obligation to BHG based on the assignment. There was no "meeting of the minds" as between REALIC and BHG as is required to establish a binding contract. While BHG may arguably have a cause of action against Mrs. Johnson with regard to the assignment executed by Dr. Johnson, there is no basis for its breach of contract claim against REALIC. Nor is there any basis for an equitable lien enforceable against REALIC. This purported claim is absent from the pleadings, and any such rights would be limited to those against Dr. Johnson's estate or Mrs. Johnson, as the proceeds of the Policy were paid to her as its beneficiary.

Conclusion:

For the foregoing reasons, REALIC's motion for summary judgment [Doc. No. 26] is GRANTED on the claims asserted against it by BHG; BHG's summary judgment motion [Doc. No. 25] is DENIED. Inasmuch as this Order disposes of BHG's claims against REALIC, there appear to be no additional claims to be tried.[1] A separate judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of September, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[1] The third party claim asserted by REALIC against Rebecca A. Johnson is contingent upon a finding of liability against REALIC. Thus, the Court's particular disposition of the cross-motions for summary judgment effects a dismissal of REALIC's Third Party Complaint.